———~o~———

## The President and Fellows of Middlebury College vs. Adms. of Freedom Loomis.

Evidence is admissible to show that a subscription is unfairly, or fraudulently
   obtained, the same as in the case of any other contract.

A discharge, without payment, from an agent clothed with *full* powers to settle
   as he shall deem for the interest of the plaintiff, is binding upon the plaintiff.

Fictitious subscriptions obtained for the purpose of affecting other subscribers,
   renders void those that come afterwards; and owing to the particular charac-
   ter and object of this subscription, renders the whole uncollectable.

THIS was an appeal from the decision of commissioners, and had
been tried by a jury in the County Court upon a declaration con-
sisting of three counts in assumpsit.    The state of the pleadings
need not be noticed, as the trial proceeded, without objection, as
upon a proper declaraion to suit the case, and non assumpsit pleaded.
   The claim was presented, and is now prosecuted, to recover
the amount subscribed by the defendants' intestate to the perma-
nent fund of *Middlebury College*.    The subscription-paper, to
which his name was subscribed, was as follows:

Addison, January, 1828. } " We whose names are hereun-
*Middlebury Coll.* vs. *Adms. Loomis.* } " to subscribed, feeling an interest
" in the prosperity of *Middlebury College*, and believing that the
" present funds in that institution are inadequate to promote an ob-
" ject of so much importance to the cause of science in this state
" and neighborhood, do, for the purpose of aiding to establish a
" sufficient permanent fund, severally agree to pay to *The Presi-*
" *dent and Fellows of said College*, the sums which are respect-
" ively annexed to our names, in six years from the first day of
" January, A. D. 1816. And we do, for the consideration afore-
" said, further agree annually, on the first day of January, in each
" year, to pay to the said *President and Fellows*, the interest on our
" said several subscriptions, from and after the said 1st day of Janu-
" ary, A. D. 1816.

" Provided, however, the above agreement is to be binding on-
" ly on the following conditions, to wit : That a sum not less than
" *twenty thousand dollars* shall be subscribed toward the above
" fund ; that the principal of the said several subscriptions, when
" paid, shall be applied and established as a permanent fund, the
" avails of which shall alone be appropriated to the use of the col-
" lege ; that each subscriber, when the principal of said sub-
" scriptions shall become payable, shall have the right, instead of
" the payment aforesaid, to give adequate security by real estate for
" the principal, & for the continual payment annually of the interest
" of said subscriptions ; and that as soon as the said *President & Fel-*
" *lows* shall, hereafter, and before the principal of said subscrip-
" tions shall be payable, receive, by donation or otherwise, above
" the debts now due, or which may hereafter be due from the
" said *President and Fellows*, for erecting and completing the col-
" lege building, a sum equal to the whole amount of the sums sub-
" scribed to this contract, the said *President and Fellows* shall re-
" fund such sums as shall have been paid for the interest afore-
" said, and shall discharge our said subscriptions, and on the re-
" ceipt of a smaller sum, shall discharge said subscriptions in pro-
" portion to such sum as shall be received.

" Given under our hands at *Middlebury*, this 20th day of No-
" vember, A. D. 1815."

The exceptions allowed by the Judges of the County Court, af-
ter referring to said subscription, proceed as follows:

"It was admitted on trial that <span>Addison, January, 1828.</span>
the defendant's intestate subscrib- *Middlebury Coll.* vs. *Adms. Loomis.*
ed the sum of four hundred dollars, and no question was made as
to the genuineness of any of the other subscriptions. It was also
admitted that the subscription was circulated and the signatures
obtained by *Dr. Davis*, then President of said College. With
the subscription, the plaintiffs also offered parol evidence to the
court, to prove that when the subscription was gotten up and filled,
the corporation was embarrassed with debts, that its funds were
limited and depressed, and that subsequently, upon the faith of the
subscription, they enlarged their plan of education and increased
their ordinary expenses. *John Simmons, Esq.* and *Mr. Merrill*
testified, that at the time the subscription was circulated, the cor-
poration were involved in debts to the amount of five thousand
dollars or more, that their permanent funds, applicable to the gen-
eral expenses of the Institution, consisted chiefly, if not entirely,
of new lands not productive of any revenue, that they were em-
barrassed and scarcely able to continue operations upon the scale
and foundation then established, and quite unable to enlarge their
plan of education or increase their expenses ; that subsequently,
and soon after the subscription was filled, they added two profes-
sorships and purchased a philosophical apparatus. The plaintiffs
then proposed to prove by these witnesses that these acts of the
corporation were done upon the faith and credit of the subscrip-
tions. This evidence was objected to by the defendants, but ad-
mitted by the court ; and the witnesses testified that the acts afore-
said were done upon the faith of the subscription. The defend-
ants objected to the subscription going to the jury in evidence,
1. Because it was not a contract founded upon any legal or suf-
ficient consideration, and because the accompanying evidence a-
foresaid, had no legal tendency to aid or supply any defect of con-
sideration appearing on the face of the instrument, and because
the consideration shown, if any, was variant from that alleged in
the declaration. 2. Because the plaintiffs had not shown that the
subscription was authorized by the corporation, or, within a rea-
sonable time, accepted by them with its several conditions. To
remove the latter objections, the plaintiffs then gave in evidence
to the court, that article of the bye-laws of the corporation which
shows the office and duties of the prudential committee ; the vote

Addison, January, 1828.

Middlebury Coll. vs. Adms. Loomis.

of the corporation of August, 1815, appointing the President of the college, Mr. Chipman and Mr. Merrill the prudential committee ; a vote passed in April, A. D. 1816, limiting the amount of subscriptions to the permanent fund ; the vote of August, 1816, establishing two new professorships ; the vote of August 20, 1818, authorizing the payment of subscriptions to the permanent fund in land at appraisal, and authorizing the discharge of their subscriptions on payment of one half the amount thereof in money ; the vote of March 2, 1819, relating to the payment of these subscriptions by notes, the vote of August, 1819, authorizing the prudential committee to settle the subscriptions of *William Slade* and *William Slade, jun.* ; and the vote of same date, appointing *Mr. Chipman*, sole agent to collect and settle these subscriptions ; all which are severally referred to and made part of this case. Whereupon the court overruled all the defendants' objections ; and the subscription was admitted and passed in evidence. It appeared that the whole amount of subscriptions was *forty-nine thousand dollars*.

The defendants offered in evidence the aforesaid vote of the corporation of August 20, 1818, with evidence to prove that unpaid subscriptions to the amount of *five thousand dollars* were then known to the corporation to be desperate and wholly uncollectable, by reason of the poverty of the signers ; so that the amount of solvent subscriptions, when the whole had by that vote been reduced to one half of the original amount, would be less than *twenty thousand dollars* ; contending that such showing would operate to discharge the whole subscriptions. This evidence was objected to by the plaintiffs and rejected by the court.

The defendants then produced evidence tending to show that many of the subscribers, including the intestate, were induced by the declaration of *Dr. Davis* to expect and believe at the time of subscribing, that the whole amount of their subscriptions would not be required, that probably not more than one half would ever be exacted, and, in some instances, that nothing but the interest for a few years would be expected.

They also offered evidence to show that the corporation had discharged part of the solvent subscriptions, not including that of

the intestate, without requiring pay- ⎰     Addison, January, 1828.
ment of any part thereof.  This ev- ⎱ *Middlebury Coll.* vs. *Adms. Loomis.*
idence was objected to by the plaintiffs, but admitted by the court.
And it was proved that *Mr. Chipman*, professing to act under
his said appointment of August, 1819, did execute a discharge
of several subscriptions against the inhabitants of *Shoreham*, with-
out receiving or stipulating to receive any payment.

The defendants also offered evidence to prove that *Dr. Davis*
obtained certain subscriptions under an engagement on his part
that the subscribers thus obtained should not be required to pay
any thing, but should be discharged without payment, and that he
did subsequently, and after other signatures were obtained, per-
mit them to erase their names or otherwise discharge them, accord-
ingly, and that his declared object in so doing was to induce oth-
ers the more readily to subscribe, while the names of these sub-
scribers stood upon the paper.     This evidence was objected to.
by the plaintiffs on the following grounds : First, that the prom-
ise of each subscriber was several and disconnected from that of
any other subscriber; secondly, that no evidence of this sort rela-
ting to any subscription, subsequent to that of the intestate, can
affect his promise ; thirdly, that no evidence of this kind relat-
ing to any subscription which was made after *twenty thousand
dollars* had been subscribed, can affect the promise of the intes-
tate ; his subscription making part of the first *twenty thousand
dollars* subscribed.    But the court admitted the evidence gener-
ally, and without regard to any of the above distinctions taken by
the plaintiffs.   Whereupon the defendants introduced evidence
tending to prove the above facts in relation to four or five sub-
scriptions, all of which were subsequent to that of the intestate,
and most, if not all, of which were made after *twenty thousand dol-
lars* had been subscribed.

The defendants also gave evidence tending to show, that subse-
quent to the aforesaid vote of August 20, 1818, the plaintiffs gen-
erally claimed of the subscribers but one half of the original amount
of their subscriptions and the interest ; that when they were set-
tled by notes, the notes were taken for that sum, and that in some
instances the subscriptions were discharged on payment of half
the amount in real estate.   And the defendants contended that if

AA

Addison, January, 1828.

Middlebury Coll. vs. Adms. Loomis. the plaintiffs had relinquished and discharged a part of said subscriptions, they had thereby discharged the whole ; as no evidence was given, aside from the subscription itself, and declarations of *Dr. Davis* of the character and description first above recited, tending to show any agreement or consent of the subscribers in general, or of the intestate in particular, for any general reduction or abatement upon the subscriptions.

The court charged the jury, among other things not material to be mentioned, that the declarations of *Dr. Davis*, and the hopes and encouragements held out by him, by which he induced persons to subscribe, did not affect the validity of the subscriptions, if they did not amount to any promise or agreement to let off a subscriber without payment, or to any certain preference in favor of any subscriber, and if they believed from the evidence of his said declarations, and of all the facts and circumstances connected therewith, that he expressed only his honest opinion and belief at the time ; but that if they believed these declarations were contrary to his opinion and belief, and intended to deceive subscribers, they would constitute a *fraud*, and render the subscriptions void; that if the corporation had made a general reduction of a part upon all the subscriptions, still leaving the amount of *twenty thousand dollars* or more uncancelled, such act would not discharge the subscribers from payment of the residue, whether such deduction was made with their consent and approbation or not—That a capricious or needless discharge of any solvent subscriber, without any payment, was an unwarrantable preference and a fraud upon the just expectations of all the others, which would entitle them to refuse payment; but that the act of *Mr. Chipman* in discharging the said *Shoreham subscribers* was not within the powers of his appointment, and therefore not binding on the corporation—That a compromise of any of the subscriptions, after the same had become the subject of dispute and controversy, would not affect the other subscriptions, though the amount required (being half of the original subscriptions) was received in real estate, if such compromise was made in good faith, upon a reasonable necessity, and not intended as a preference—That if they believed from the evidence that *Dr. Davis*, at the time of obtaining subscriptions, did

enter into stipulations, which were ⎰    Addison, January, 1828.
afterwards  executed,  with  any ⎱ *Middlebury Coll.* vs. *Adms. Loomis.*
subscribers, that they should be allowed to take off their names,
or should be otherwise discharged without payment, and that this
was done for the purpose of inducing others, from a view of these
subscriptions, the more readily or liberally to subscribe, and that if
any part of the entire subscription as returned to the corporation was
obtained by means of these  apparent  but unreal subscriptions,
they would regard the whole subscription  as affected with *fraud*,
and would find for the  defendants—That if the evidence did not,
to their full satisfaction, establish these propositions,  they would
find for the plaintiffs.

Whereupon the  jury returned a verdict in favor of the defend-
ants.    To which  decisions of the court in admitting evidence on
the part of the defendants, and to the charge aforesaid, the plain-
tiffs except.    Exceptions allowed and signed in court, the 6th
day of October, A. D.  1826 ; and by order of court, the ques-
tions of law arising upon the trial aforesaid passed to the Supreme
Court for a final decision thereon.

The several votes of the corporation, alluded to in the fore-
going case, are as follows to wit :

"August 17, A. D. 1815.

" *Voted,* that the *President, Mr. Chipman* and *Mr. Merrill,*
" be the prudential committee for the year ensuing."

"April 15, A. D. 1816.

" *Voted,* That the subscribers to the permanent fund of *Mid-*
" *dlebury College,* shall on the first day of January, A. D. 1822,
" be holden and stand accountable to the corporation of the  *Col-*
" *lege* for  no more than  the sum of *fifty thousand dollars* of the
" principal of their subscriptions, and in proportion as more of that sum
" shall then be subscribed, the subscriptions shall then be reduced."

August 22, A. D. 1816.

" *Resolved,* that a *Professorship of Chemistry* be established in
" this college.

" *Resolved,* That the *Rev. Gamaliel S. Olds* be appointed a
*Professor of Chemistry.*"

" *Resolved,* that there be established in this institution a *Pro-*
" *fessorship of Divinity.*"

" *Resolved,* there the *Rev. John Hough,* now professor of lan-

And on the 20th day of August, A. D. 1818, the following pre-amble and resolution was adopted :

" Whereas, it appears to the corporation that many subscribers " to the permanent fund of *Middlebury College*, were induced to " subscribe larger sums than they could consistently pay from a " well grounded persuasion that the amount of the sums subscribed " would be so far increased that agreeable to the terms of the sub-" scription they would not be holden to pay more than one half of " the sums by them subscribed, and although the subscribers fairly " took upon themselves the risk, and are legally bound to pay " the whole sums by them subscribed, yet this corporation being " sensible that the change of times and distressed situation of the " country, which immediately followed, and which could not have " been foreseen by the subscribers, and which alone prevented an in-" crease of the amount subscribed, and being satisfied that every " contract entered into, not from pecuniary motives, but with be-" nevolent and liberal views, ought to be carried into effect, not on " principles of strict law, but on principles the most liberal, " Therefore,

" *Resolved*, That any subscriber to said fund may have the " privilege of paying his subscription in lands, the value of the " lands to be agreed upon by the prudential committee. *Provi-* " *ded*, that the sum paid shall not be less than *one hundred dollars*, " and that the land conveyed shall be tenantable and fit for culti-" vation—and that the subscribers by paying half of the sum by " them subscribed in *money*, and the interest on the whole sum " subscribed up to the time of such payment, shall be entitled to a " discharge of their subscription, which the agents of the corpora-" tion are authorised to give."

" March 2, A. D. 1819.

" *Voted*, that payment by note on demand, with interest, by the " subscribers to the permanent fund, for one half of their respective " subscriptions and the interest of the whole subscription to " the time of payment, is payment within the meaning of the " vote of this corporation authorizing each subscriber to settle his " subscription by the payment of one half of his subscription and

" the interest on the amount of $\}$    Addison, January, 1828.
" his subscription up to the time of $\}$ *Middlebury Coll.* vs. *Adms. Loomis.*
" such payment."

" August 16, A. D. 1819.

" *Resolved*, that the prudential committee be authorised to make " such settlement of the subscriptions of *William Slade* and *Wil-* "*liam Slade, jr.* as in their discretion they shall judge agreeable to "the principles of equity, and as may be for the interest of the cor- " poration.

" *Resolved*, that *Daniel Chipman* be appointed with full powers " to close the subscriptions for the permanent fund in such man- " ner as he deems for the best interest of the *college*, and that he " be allowed such sum for such services as the prudential commit- " tee think equitable."

This cause was argued at the Supreme Court, January Term, 1827, by Messrs. *Starr* and *Phelps* for the plaintiffs, and by Mr. *Bates* for the defendant, before *Hutchinson* and *Royce*, justices. The chief justice, being nominally one of the plaintiffs, and *Prentiss*, justice, having been counsel in the cause, did not sit in the trial. It laid for consideration till January Term, 1828, when *Royce*, J. having declined the office and the Hon. *Bates Turner* being appointed in his stead, it was again argued by the same counsel before *Hutchinson* and *Turner*, justices.

*Argument for the plaintiffs.* 1. As to the authority of *Dr. Davis* to take the subscription. The reception of donations of any kind, for promoting the purposes of the institution, is unquestionably within the general powers of the corporation. *Dr. Davis*, as one of the prudential committee, was their authorised agent for this purpose, and in soliciting and receiving donations, acted within the scope of his authority. If, therefore, a previous authority was necessary, he had it. But a previous authority is not necessary. It is settled that corporations may act by their agents in the same manner as individuals may do. The assent of a corporation to the act of their agent is often implied when no vote of the corporation to that purpose appears.—1 *Chip.* 373, *Procter* vs. *Webber.*—9 *Mass.* 335, *Mann* vs. *Chandler.*—See *Chipman's note* to *Proctor* vs. *Webber*, and *Dunn* vs. *St. Andrews Church*, 14 *Johns.* 118.—The votes of the corporation expressly ratify the proceedings of the agent. And a subsequent assent

Addison, January, 1828.  }  is sufficient.—10 *Mass. R.* 397,
*Middlebury Coll.* vs. *Adms. Loomis.* }  *Hayden* vs. *Middlesex Turnp. co.*

2. As to the consideration of the promise. It is settled that any advantage foregone, or any expense incurred, by the promisor in consequence of the promise, if it be done in pursuance of the expectation of the promisor at the time of the promise, is a good consideration for the promise. In this case, it is proved that the corporation incurred considerable expense in reliance on the promise. The promise was made to the plaintiffs in their character as trustees. It became their duty, then, to take such measures as were necessary to render the fund serviceable to the purposes of the subscription. This was expected and intended by the subscribers, and the expense incurred was not only in pursuance of the purpose of the subscription as expressed on the face of it, but is directly pointed at and regulated by the subscription itself. Did the subscribers expect this money to lie dormant in the hands of the corporation? Or did they expect it to be applied to the general purposes of the institution? The tenor of the subscription answers this question. If it was to be applied to the objects of the charter, it was to be done only by organizing such an establishment as the amount of the subscription warranted. The interest was to be paid annually, and that for the purpose of defraying the current expenses of the *college.* How then can the subscribers say that the expenses of the institution were not incurred upon their undertaking? It compares with the case of a subscription for preaching—or for a fire engine—or for building the college-edifice. The only difference is, that in one case the object is general and complex, and in the other simple and specific.

3. As to the *fraud* in obtaining the subscription which is attempted to be proved. No evidence of any fraudulent practices can be found until after the subscription by the defendant;—of course they could not have been deceived. If the sum of *twenty thousand dollars* was *bona fide* subscribed, the addition of a fictitious, or even a forged, subscription would not vitiate the previous subscriptions. Besides, if the after subscribers waive any supposed fraud, and pay their subscriptions, no advantage can be taken by the previous subscribers. The idea of *fraud* in this business is, after all, fallacious. There is nothing joint in this contract, but it is to

every purpose several, and strictly ⟩    Addison, January, 1828.

so, on the part of the subscri-  ⟨ *Middlebury Coll.* vs. *Adms. Loomis.*

bers.  Each individual is responsible solely for the amount of his subscription, and this amount is not varied by the subscription of another.   It may be said that the object, being a common one, the subscription of one person is an inducement to another to subscribe.   But this argument is answered by the condition that *twenty thousand dollars* should be subscribed before the contract should be binding.   If the subscription had been silent on this point, there would be some foundation for the argument.   But as it is, the deception (if any was practised) has no bearing upon the rights or duties to grow out of the contract.   All that can be said of it is, that the example of one person acting for himself, might have influenced another, in the same manner as his mere opinion or advice might have done.   In this point of view, it does not a-mount to such a *fraud* in obtaining a contract as will vitiate it.

4. The relinquishment of a part of the subscription, provided *twenty thousand dollars* remain, does not vitiate the contract.—— The contract requires not the *actual payment*, but only a *subscription* of *twenty thousand dollars*.   When this is obtained *bona fide*, the subscribers became severally debtors to the plaintiffs for the amount of their subscriptions.   It was anticipated that some persons might become insolvent and unable to pay their subscriptions.   In such case the plaintiffs had an undoubted right to com-promise with such and take such an amount as might be within [the ability of the party to pay.   The plaintiffs might also have rested after having obtained an actual subscription of *twenty thousand dollars* ; or they might have discharged all after-subscriptions, and yet the previous subscribers would not have been discharged.   They may also discharge in proportion, and ac-cept such a proportion as would make in the aggregate the sum proposed.   The subscribers have in this fixed their own criterion as to the amount to be raised, and have left it optional with the plaintiffs to raise a further sum or not.   When this condition was performed, the subscribers became debtors to the plaintiffs.   And certainly, no injustice is done by an equal reduction among them. It certainly was not the intention of the defendants to force upon the corporation a greater sum than the exigencies of the Institu-

tion required. It would be strange, indeed, if in case a greater subscription was obtained than was requisite, the plaintiffs should be compelled to exact more than the object of the subscription required, or receive nothing. The stipulation for a return of the money, in whole or in part, in certain contingencies, is absolutely inconsistent with such an idea. In short, there is nothing in this case which puts the plaintiffs on a different footing from an ordinary creditor ; or which prohibits their exacting the whole, or a part, or none, of the several sums subscribed, as they in their discretion shall think proper. The provision for funding the principal is merely a mode of appropriation with a view to secure the permanent fund, and does not interfere with the discretionary power contended for. Indeed, it relates only to such sums as shall be paid. If there be any limitation to be inferred from the contract, it is merely such as may require the plaintiffs to keep the subscription good at *twenty thousand dollars.*

5. The proceeding with respect to the *Shoreham* subscribers affords no defence to the action. For, if the view of the case already taken, be correct, then the subscribers, being several debtors to the plaintiffs, and the plaintiffs having the right to deal with their several debtors as they shall think proper, then the absolute discharge of one subscriber is no defence to another. It is not unnatural that the business should have been left on this footing ; for the subscription, being for the benefit of the plaintiffs, it was taken for granted that their interest would induce them to exact payment in all cases where it should be proper. If they had the power to compromise with an insolvent debtor, and receive a part, or discharge him, they certainly had the power to relinquish the subscription to those Friends whose religious tenets forbid their contributing to the object. Whether they did right or wrong, it amounts at most to a breach of their trust as Trustees of the College. What the remedy is in such case, it is not necessary to enquire. But, certainly, it is not for the defendants to resist the performance of their contract upon the ground that the plaintiffs have been guilty of a misapplication of funds derived from other sources. It may be said that the object of the subscription is a common one, and that the discharge of one is not only inconsistent

with the purpose of the contract,  } <span style="float:right">Addison, January, 1828.</span>
and the consideration upon which } *Middlebury Coll.* vs. *Adms. Loomis.*
it was made, but is an evasion of the stipulation that *twenty thou-sand dollars* should be furnished. But to this it may be answered, that the stipulation is not that the money should be paid or secured; but only that it should be subscribed. It was undoubtedly anticipated that some part of that sum would never be paid. But they were willing to become responsible upon that condition, and leave the Corporation to manage the subscription as they in their discretion should think best. They trusted in this respect to the prudence of the Corporation. They knew that the Corporation were best acquainted with the exigencies of the *College*, and were also the proper persons to manage the subscriptions. If they have erred or misjudged in this respect, it is one of those contingencies which the defendants must have had in view when the contract was made.

The consideration of the contract was not the subscription of others, but the continuance on the part of the Corporation of the establishment. The obtaining of the amount of *twenty thousand dollars* was merely a condition precedent. The object of this condition was to afford a reasonable prospect that the money to be paid by each would effect the desired object. This being obtained, the contract became absolute. Each became a several debtor, and the plaintiffs were left to exercise a reasonable discretion in realizing the money.

At the same time the subscription, having doubled the amount required by the condition, the previous subscribers could not avail themselves of the discharge of the subsequent signers, provided the requirement of the condition is still fulfilled.

The discharge of the two Friends in *Shoreham*, is no defence if sanctioned by the Corporation, as such an act, if illegal, is void, and their successors may still collect the debt.

But no corporate act discharging these men is shown. Whatever was done was the act of an agent not authorised to divert the funds to a purpose not within the object of the subscription.

The most general discretion which could be given would not extend to a diversion of the fund. It would be limited to the scope of his agency, and would refer merely to the mode and terms of payment.

BB

Finally, nothing conclusive was done on the subject. The whole transaction consisted of mere propositions which never resulted in any definite arrangement. No discharge was ever executed. Nothing more than a proposition, afterwards abandoned.

*Argument for Defendants.* That no promise, not under seal, can be enforced at Law without a consideration, will be admitted. The following authorities shew with what tenacity the Courts adhere to this principle of the Common Law, whether the promise is in writing or not.—7 *Term Rep.* 350, *Rann* vs. *Hughes.*—7 *N. York Ter. Rep.* 26, *Pearson* vs. *Pearson.*—9 *Mass. Rep.* 254, *Kendall et al* vs. *Codwin.*—11 *Mass. Rep.* 113, *Philips' Academy* vs. *Davis.*

In order to constitute a consideration, something must be done or foreborne by the party to whom the promise is made, at the time of the promise, which is called a *consideration executed* ; or there must be a *binding* obligation to do, or forbear to do, something thereafter, which is called a *consideration executory.* In other words, the party must do or forbear something in order to constitute a consideration for the promise made to him. It will be readily seen that without one or the other of these, there can be no consideration, and if any case or authority can be shown where an action has been sustained on a promise in the absence of both of them, it is an authority not showing what amounts to a consideration, but that no consideration is necessary.

In the present case, the Corporation neither did any thing, nor imposed on themselves any obligation for the future. Had the subscribers paid and the Corporation received the money, they might perhaps, have been bound by the *reception* to pursue the directions of the donors. But the question here is not what might be the effect of *receiving* the money, but it is, was the *promise* binding?

A mutuality in contracts has ever been deemed essential, and is indeed, founded on the plainest principles of Equity. It would be extremely unreasonable that one party should be holden and the other at liberty. The following authorities shew that the principle is well established. 3. *Term Rep.* 653, *Cook* vs. *Axley.*—12 *Johnson's Rep.* 190, *Turkee* vs. *Wood.*—16 *Johnson's Rep.* 47, *Jackson ex dem.* vs. *Howe.*

When these subscriptions were ⟨ Addison, January 1828.
made, and long after, there was ⟨ *Middlebury Coll.* vs. *Adms. Loomis.*
no act of the Corporation authorising any such proceeding—no
agent authorised to act for them in receiving subscriptions.    Pri-
vate unauthorised individuals drew up the paper and took sub-
scriptions.   They could not bind the Corporation.   There was,
then, no party to bind itself by contract, or to receive a proposi-
tion to do or not to do a thing.    Had the terms of the writing
bound the Corporation to any thing, still the fact that it was not
their writing would have been a good defence for them against
any attempt to bind them by virtue of it.    The Corporation then
being a stranger to this subscription, and not bound by it, the sub-
scribers were not bound to them, and no subsequent act of either
party alone could convert the transaction into a mutually bind-
ing contract.    The Corporation have not, however, to this day
passed any vote or done any act imposing an obligation on them-
selves.    They have not agreed to continue the *College* in opera-
tion, or to convert the money received into a permanent fund.
They have, it is true, discharged one half of the sum, and passed
several votes recognising the subscription, but have all along pro-
ceeded on the ground that the subscribers were bound without
any correspondent obligation on their part.     See 8 *Mass.* 292,
*Essex Turnpike* vs. *Collins.*

This subscription-paper was not then binding upon the sub-
scribers as a contract.    The Plaintiffs, however, contend that the
writing held out an inducement to the *College* to continue and
increase their expenses, and that the *College* have acted upon
that inducement, and are therefore entitled to recover those ex-
penses.    Whether by this, the plaintiffs mean to be understood
as contending that the writing may and ought to be construed as
a proposition to the Corporation to incur those expenses, and an
express promise to pay them—or, that containing a promise to give
a certain sum, it was designed as an *inducement* to the Corporation
to expend money, and they having done so, the law would *imply*
a promise against those who held out the inducement, has never
been very clearly stated.    But in either case, the proposition can
be no more nor less than this, that the signing of the paper subjected

the subscribers to the extent of their subscription, for the ordinary expenses of the college, upon the principle that it was money laid out and expended at their request and for their use. To support an action for work or labour done, or money paid to the use of another, evidence of a *request* is indispensible.—1 *Saun.* 264 *Osborn* vs. *Rogers, note* 1.—3 *Bos. & Pull.* 247, *Wennall* vs. *Adney, note a.* The authority, of which the plaintiffs stand in need in this case, should show that a promise to add to the estate, or general fund of an individual, or a corporation, is such an inducement or request to them to continue in operation as will make the promisor liable to the amount of his promise for money which they afterwards expend in their own business, upon the principle that it is money paid out by his request. For it is not conceived that the prefacing of such a promise with expressions of apprehension that the person or corporation may fail for want of funds, alters the case at all. It is a mere naked promise to increase the funds.

It appears to me, then, that the plaintiffs have failed to produce any good precedent or satisfactory reason in favor of the position they would assume. I shall now proceed to offer what I consider very conclusive, both in point of precedent and upon the reason of the thing, against it. I must first premise, that no construction, effect, or meaning ought to be given to the writing different *in point of fact* from what the parties intended at the time, and the writing naturally imports. If it be a legitimate course of argument to say that the writing may be taken to mean something, and to have an effect which the parties did not think of, it is in vain to argue against it, its construction will be as various as the different minds applied to it. But to come to the point, I say :

1. The defendants put their undertaking (whatever it was, gratuitous or not) in writing, and in the shape of a promise. This writing they signed, and by that they must stand or fall. If it turns out that the writing does not import a legal contract, they cannot be charged by virtue of it, *directly or indirectly*. In this writing the subscribers say, we will give so much towards a general fund for *Middlebury College,* and pay it at such a time. They did not say or mean, as the Plaintiffs' declaration has it, you have laid out money, go on, lay out more, add new professors, &c. we will

. see you paid.    The very fact ⟨
that a time of payment was fixed,   ⟩
without any reference to what the College might do,  shows that
no such proposition was intended.    One cannot analyze this posi-
tion of the Plaintiffs without a smile.    It. stands thus.    The sub-
scriber says : "I fear your funds are inadequate, I will give you
for a permanent fund four hundred dollars, payable in four years."
"Thank you," reply the Corporation, "we will add two profes-
sors and apparatus, and expend money in carrying on the College
agreeable to *your request*, and charge you for money laid out to
your use."

2. In *Kendall, Boutell, and others* vs. *Thomas Codwin, adm.
&c.* 9 *Mass. Rep.* 254,  before cited—the suit was upon a note
given on a subscription-paper signed by the defendant and others,
promising to pay a certain sum to the deacons of a church for the
purpose of creating a permanent fund, for the benefit of the
church.    Three objections were made by the defendant.    1.
That the promise was void for want of a consideration.    .2.
That the deacons of the church had no authority to receive mon-
ey for the church.    3. That the Plaintiffs in the case were not
legally deacons.    "On the last objection the court gave no opinion.
But they considered the two former ones well founded, and on
*both* grounds set aside the verdict."    *In Limerick Academy* vs.
*Davis,* 11 *Mass. Rep,* 113, *before cited*—the written subscrip-
tion on which the suit was brought was very similar to the one
now under consideration.    Two objections were raised by the
defendant.    1. That the Corporation was not in existence at
the time the promise was made.    2. That the promise was void
for want of a consideration.    *Judge Sewall,* in delivering the
opinion of the Court, observed that the first objection might be
got over, there having been some legislative enactment upon the
subject.    But the second objection was impassable.    Among other
remarks he has the following : "The general principle is that, vol-
untary agreements and promises, however reasonable the expec-
tation from them of gifts or disbursements,  even to public uses,
when made without consideration, are not to be enforced as con-
tracts."    In 14 *Mass.* 172, *the case of the Academy* vs. *Davis,*
was recognized as good authority.    And in the last case the re-

Addison, January, 1828.

*Middlebury Coll.* vs. *Adms. Loomis.*

covery was had upon the ground that the subsequent conduct of the defendant was equivalent to a request to have the money expended in the erection of the building. In the case of the *Academy* vs. *Davis*, the promise was made with a view to the erection of the Academy, and for that sole purpose. The Academy was afterwards, and before the suit was brought, erected. With how much force it might have been urged in that case that the Academy was erected, and the money expended, upon the faith of that subscription! and that, therefore, it ought to be taken that the money was expended at the request of the defendant and for his use. The same remark may be applied to the case in 14 *Mass.* Were the doctrine now contended for correct, the Court might have saved themselves the labour and learning expended in those cases. But it was reserved for the ingenuity of a later day to contend that a promise, void for the want of a consideration might yet be construed to operate as an inducement or request, and, in this way, as effectually charge the promisor as if made upon the most valid consideration.

3. The whole subscription paper manifests the design of the signers to make a *gratuity*. The consideration is not left doubtful but is expressly said to be, the interest which they feel in *Middlebury College*, and their belief that its funds are not fully adequate, &c. in other words, their good will and affection towards the *College*, which is not a sufficient consideration to enforce an executory contract. It was their right, to have the motive or consideration upon which they subscribed, expressed. And this consideration being expressly stated so as to show their design to make a gratuity or gift, no other different consideration can justly be raised by implication arising out of the writing or other circumstances. The condition as to what should be done with the money cannot be construed into a correspondent obligation on the part of the corporation, constituting a consideration for the subscribers' promise. It is not put into the form of a promise or consideration. Another consideration had just been expressed: and moreover, the paper was not signed by the corporation, or any one acting for them, which shews that it was not the design to impose upon them any obligation of any kind. When it is said that the

corporation relying upon these sub- <span>{</span>
scriptions, have incurred expen- <span>}</span>
ses about the institution, the question returns, whether the sub-
scription was legally binding when made? If they have acted up-
on a promise without a consideration, it is their own folly. If one
promises to give a thousand dollars to another, who upon this, in-
creases his expenses, sends his sons to college, &c. does this
give validity to a *nude pact?* Every person who relies and acts
upon a gratuitous promise, does so at his own risk. He cannot by
so doing convert it into a legal contract.

To advert to another ground of defence. It will be perceived
that in the writing the subscribers say " the above agreement is to be
" binding only on the following conditions." Then follow the
conditions, one of which is, " That the principal of the said sub-
" scriptions, when paid, shall be applied and established as a per-
" manent fund, the avails of which shall alone be appropriated to
" the use of the *College.*" If the writing is a legal contract it
cannot be controlled by evidence of what was said, but must speak
for itself. And this condition is broken by the discharge of one
half the sum subscribed. It is broken by the immediate expen-
diture of what they received for ordinary purposes. It is also
broken by *Mr. Chipman's* discharges to people in *Shoreham.*
*Mr. Chipman's* powers to settle were discretionary and unlimited.
The contract was that the *sums subscribed* should be converted in-
to a fund, &c. But by the corporation *one half the sum* has been
released. " The principal" of said subscriptions was to be estab-
lished as a fund. But one half of the principal is given away by
the corporation, and in some cases the whole. If it be said that
the discharge of one half was to this subscriber as well as to the
rest, the answer is, the contract, as it first stood, could not be altered
without the consent of both parties. He never asked for, nor con-
sented to, such alteration. It is in vain to say that *twenty thousand
dollars* remain due. The condition that " the principal of the sev-
" eral subscriptions" shall be converted into a permanent fund is
distinct, and independent of the condition that *twenty thou-
sand* should be subscribed. The subscribers annex two condi-
tions, they will not be bound, unless, first, *twenty thousand dol-
lars* shall be subscribed, nor, secondly, unless all that is sub-
scribed shall be converted into a fund. It could not have been in-
tended that the corporation should do what they pleased with all

the subscriptions above the sum of *twenty thousand dollars.* If this were the contract, they were under no necessity of treating all the subscribers alike, they might have discharged such as they pleased, and been guilty of the grossest partiality and personal preferences. No doubt, the first subscribers were influenced by the hope that *fifty thousand dollars* would be subscribed. And the condition which they made with regard to the disposition of it, is not affected by the other precautionary condition as to the *twenty thousand dollars.*

Upon another point, and the last which will be made in this argment, the defendant was so fortunate as to have the opinion of the judge who presided at the jury trial in his favor. The judge charged the jury that if *Dr. Davis*, who procured the subscriptions, did persuade any persons to sign the paper, with a view that he might make use of their names to induce others to sign, and did promise to discharge them without any payment, and afterwards, and after they had been used to draw in others, did discharge them, or suffer them to erase their names, it would avoid the whole subscription. And it appears from the case that several instances of this kind were proved, and that too when the names stood pretty early upon the subscription. Now, in subscriptions of this kind, though it may be said that the promise of each subscriber is in one sense several, and that he may be sued alone, yet it is equally true, that every subscriber binds himself with a view to the joint result or effect of the whole subscription, and upon the supposition that all who sign are alike bound with him. Seeing on the paper names which he respects, may increase his belief that the object is laudrble and the expectation that many others will sign may induce him to think it will be effected. Any deception, therefore, in procuring subscribers, or discharging them, is a fraud upon him which avoids the obligation. It is giving to the whole transaction a character different from what it imports on the face of it, and different from what every subscriber has a right to consider it. Unsophisticated reason rebels against the proposition that the first, or the last, or the middle subscriber may be holden, and the rest discharged. The law in other transactions requires good faith, why should it not in this?

. At the close of the term, the o- { Addison, January, 1828.
pinion of the court was delivered by { *Middlebury Coll.* vs. *Adms. Loomis.*

HUTCHINSON, J.   This case, and the other   connected with it, and the principles embraced, are so important, and there being two only of the members of the   court who can   act in   deciding them, we are disposed to place our decision on grounds in   which we are perfectly agreed.   Indeed, we find ourselves disagreed in nothing but the mode of  arriving at the same conclusion upon one of the points to be decided.

The claim of the plaintiffs rests on the validity of the contract contained in the subscription-paper read in evidence on  the trial, in connection with the proceedings  of the corporation with regard to  the  same.    And it is not disputed that *Freedom Loomis*, the intestate, actually signed his name to that paper.

As the defendant obtained· a verdict· in this  cause, those points decided in favor of the plaintiffs by the County Court, are not necessarily raised on these  exceptions, yet the counsel for the parties, as a matter of convenience,  have applied their  arguments in this cause to all those points which,  in  any  event,  might be common to the two now to be decided.   This was not improper at all, for it would be useless to grant the plaintiffs a new trial, if, as the defendant contends, they have no  cause of action  upon legal grounds apparent upon the record.    But as both causes have been argued, and are now to be decided, we shall dispose of the several points where they most technically belong.

The exceptions taken by the plaintiffs to the admission of testimony offered by the defendant in this action, lead us to contemplate the nature of the subscription, and some things urged in  reference to the consideration upon which it was formed.    The subscription commences with a recital of the good feelings of the subscribers towards the *College*, their conviction of its want of funds to promote an object of its importance, and then contains a promise that the subscribers will, for the purpose of aiding to establish a sufficient permanent fund,  pay to  the plaintiffs the sums, &c. And, further, for the consideration aforesaid, they promise to pay the annual interest on the same till the whole is  paid.    It then recites the conditions upon which only it was to be of binding force; one of which conditions was, that  not  less than *twenty thousand*

CC

Addison, January, 1828. } *dollars* should be subscribed

Middlebury Coll. vs. Adms. Loomis. } to said permanent fund.    Now, whether this contract was obtained fairly or not; whether it was obtained by holding out flattering inducements of things never to be realized ; whether fictitious subscriptions were obtained to be used as allurements to the generous and unwary ; these were proper subjects of inquiry, as they would be in case of any contract.    The defendants complain that they were decoyed by manœuvres bearing these characters ; and the testimony offered by them was correctly admitted.

The plaintiffs except to the charge of the court in relation to the declarations of *President Davis* while soliciting these subscriptions.    So far as the jury should believe his declarations were but the expressions of his honest opinion at the time, the charge is favorable to the plaintiffs.    But so far as his declarations were calculated and intended to deceive subscribers, and were made contrary to his own opinion and belief, the charge was, as it should be, against the plaintiffs.    The plaintiffs have brought, and are prosecuting this action in affirmance of *President Davis*' agency, and, while they do so at all, they must affirm it *in toto*. If they would have the benefit of his contracts they must take them subject to such incumbrances as his conduct appended to those contracts, while he was making them.    And the jury were properly instructed, that, if the inducements held out by *President Davis*, to obtain subscribers, had no foundation in fact, and that known or believed by *Dr. Davis* at the time, the whole was tinctured with *fraud*, and the jury might find for the defendant.

The charge of the court, with regard to the powers of *Mr. Chipman* to discharge the *Shoreham subscribers*, was in favor of the plaintiffs ; but *we see no reason why his powers were not coextensive with his acts.*    The vote of the corporation gives him "*full* " *powers to close the subscriptions to the permanent fund in such* " *manner as he deems for the best interest of the College.*"    No language they could use would convey any more power to discharge without receiving pay than was used.    They must have intended he should learn their circumstances in each particular case, and act upon those circumstances as prudence should dictate.    If he found the subscriber of doubtful responsibility, or the claim itself

doubtful, he might obtain the best <span>Addison, January, 1828.</span> settlement he could, and secure <span>*Middlebury Coll.* vs. *Adms. Loomis.*</span> what he could.    If he found the claim a nullity, he might discharge without payment.    If instructions to this effect had been given to the jury, they would have been sanctioned by this court.

Upon the point of the stipulations said to be entered into by *Dr. Davis*, while soliciting subscriptions, the Court instructed the Jury, that if they believed from the testimony that he made such stipulations, which were afterwards executed with any of the subscribers, that they should be allowed to take off their names, or be otherwise discharged without payment, and that this was done for the purpose of inducing others from a view of these subscriptions the more readily or liberally to subscibe, and that if any part of the entire subscription returned to the Corporation was obtained by means of these apparent but unreal subscriptions, they must regard the whole subscription as affected with the *fraud*, and find for the defendants.

It would not be easy to excite a doubt upon the correctness of this part of the charge, if it applied only to such subscriptions as were obtained after those which were fictitious, nor, if deducting those that were fictitious and those obtained afterwards, less than *twenty thousand dollars* remained.    There is more difficulty as the case stands ;  for the charge makes the unreal subscriptions and any one obtained afterwards, and by their means, affect and defeat those before obtained.    This instruction assumes the position that, though the subscriptions are several in one sense, so that neither subscriber was holden for any other, yet, in another sense, it was entire and must stand or fall together ; and that the object was to raise a permanent fund, which, when raised, consisted of the whole sum subscribed and returned to the Corporation, and that each subscriber had a right that none of this should fail through any fraudulent management of those by whom the subscription was obtained.    We have not been free from difficulty upon this point, but, upon mature consideration, we are disposed to support the verdict.    Upon reading the subscription, and learning the history of its circulation, and noticing the magnitude of the object proposed, it was the reasonable expectation of the first subscribers that the paper would be presented, in a fair and honor-

Addison, January, 1828.  able manner, to the people of prop-
*Middlebury Coll.* vs. *Adms. Loomis.*  perty within that territory, whose
inhabitants might well be supposed to wish the prosperity of the
*College,* and that the whole would be returned to the corporation
to form that permanent fund which it was hoped would relieve
the *College* from future pecuniary wants. And they had an in-
terest that this fund should be so fairly obtained that the *College*
might have the friendship and patronage of the surrounding popula-
tion in every other point of view, as well as their pecuniary patronage.
Furthermore, one condition of the subscription is, that in an event
therein described, the last subscriptions even to any amount, shall
operate to relieve the first subscribers from their subscriptions, in
whole or in part, as the result should prove. There was a sum in
contemplation that would answer all the exigencies of the Corpo-
ration, and all beyond that was merely a relief to those who sub-
scribed the amount thus contemplated to be raised. They, there-
fore, had a greater interest in the after subscriptions than the
corporation themselves. It is right, therefore, that any defeat of
the later subscriptions, through any fraudulent management of the
agents of the Corporation, should render the whole uncollectable.

The Judgment of the County Court is affirmed.

*Phelps* and *Starr,* for plaintiffs.

*Bates,* for defendant.

